Executor of HAMBLIN CONVERSE v. ERASTUS CONVERSE.

A lower degree of intellect is requisite to make a will, than to make a contract. But in the former case something more is required than mere *passive* memory. There must be sufficient *active memory* to collect and retain the elements of the business to be performed, for a sufficient time to perceive their obvious relation to each other.

In this case the court below instructed the jury, that the validity of the will in question must depend upon whether the testator had sufficient mental capacity to execute it, at the time it was executed ; that he must then have been of sound disposing mind ; that this did not imply, that the powers of the mind must not have been weakened, or impaired, by disease, or old age; that it would not be sufficient, that the testator might be able to understand a question and answer it in a rational manner, nor was it necessary, that he should have such a capacity of mind, as would justify his engaging in complex and intricate business; but that the jury must be satisfied, in order to justify them in establishing the will, that the testator, when he made it, was capable of knowing and understanding the nature of the business he was then engaged in, and the elements of which the will was composed, and the disposition of his property, as therein provided for, both as to the property he meant to dispose of by his will, and the persons to whom he meant to convey it, and the manner in which it was to be distributed between them. And it was held, that herein there was no error.

APPEAL from a decree of the probate court, allowing the will of Hamblin Converse. Trial by jury, December Term, 1848,—BEN-NETT, J. presiding.

On trial, after the executor had given evidence to prove the formal execution of the will, the defendant introduced testimony tending to prove, that the testator, at the time of making the will, was about seventy eight years of age, and that as early as 1844 he was afflicted with a disease of the brain, which was incurable and progressive, and that he lost all reason for some months before he died ; and physicians were called, who gave it as their opinion, that the testator might do common business, with which he was familiar, but that he would not be able to enter into any new or complicated business, and that no reliance could be placed on the action of his mind.

The executor introduced evidence tending to prove, that the testator, at the time of making the will, and before and after, was of sound mind, and capable of transacting all kinds of business.

The defendant requested the court to charge the jury, that, if the testator was feeble in body and mind, and subject to a disease of the brain, which was continuous and progressive, and his memory and mind were so impaired, that he could not act upon important business with reason and judgment, he was incapable of making a will.

But the court, among other things not objected to, instructed the jury, that the validity of the will in question must depend upon the fact, whether the testator had sufficient mental capacity to execute it, at the time it was executed; and that, to give it effect, he must then have been of sound disposing mind; but that this did not in any way imply, that the powers of the mind must not have been weakened, or impaired, by disease, or old age; and in regard to the degree of capacity, which the jury must be satisfied the testator possessed at the time of making the will, the court told the jury, that it would not be sufficient, that he might be able to comprehend and understand a question which might be propounded to him, and answer it in a rational manner, nor was it necessary, that he should have such a capacity of mind, as would justify his engaging in complex and intricate business; but that the jury must be satisfied, in order to justify them in establishing the will, that the testator, when he made it, was capable of knowing and understanding the nature of the business he was then engaged in, and the elements of which the will was composed, and the disposition of his property, as therein provided for, both as to the property he meant to dispose of by his will, and the persons to whom he meant to convey it, and the manner in which it was to be distributed between them; and that, if they found all this, it should be found, that he had sufficient capacity to make the will in question, but otherwise not.

The jury returned a verdict establishing the will. Exceptions by defendant.

*H. Seymour* and *Linsley & Beckwith* for defendant, cited 6 Co.  23; 8 Vin. 43; 2 Hagg. 84; 2 Eccles. R. 348.

*J. Pierpoint* and *A. Peck* for plaintiff, cited 3 Wash. C. C. R. 587; 4 Ib. 261; 9 Conn. 102; 8 Mass. 371; Roberts on Wills 30.

The opinion of the court was delivered by

REDFIELD, J. The subject involved in this case is one of some difficulty. It is not easy to lay down any precise rule, as to what exact amount of mental capacity is sufficient, to enable one to dispose of property by will. The rule laid down by the judge in this case, in summing up to the jury, seems to have been rather a medium one, rather sensible and judicious, and if we reversed the judgment, we could hardly expect to prescribe a safer or more intelligible one. Every man will have his own mode of expressing the thing. The rule of one is very little guide to another.

I have myself usually told a jury, in these cases, that less mind is ordinarily requisite to make a will, than a contract of sale, understandingly, for the reason, that in contracts of sale there are usually two parties, and some degree of antagonism between their interests and efforts;—so that here mind is opposed to mind, and consequently it is somewhat more difficult to see clearly the just bearing of all the relations presented, than under the common circumstances of making a will, where one is left free to act upon his own perceptions merely. But this is not always the case in making a will. One may be beset by an army of harpies, in the shape of hungry expectants for property, altogether more perplexing than the ordinary circumstances attending a disposition of property by sale.

But it may be safe, no doubt, to affirm, that, in making any contract understandingly, one must have something more than mere *passive* memory remaining. He must undoubtedly retain sufficient *active memory*, to collect in his mind, without prompting, particulars, or elements, of the business to be transacted, and to hold them in his mind a sufficient length of time to perceive, at least, their more obvious relations to each other, and be able to form some rational judgment in relation to them. The elements of such a judgment should be, the number of his children, their deserts, with reference to conduct and capacity, as well as need, and what he had before done for them, relatively to each other, and the amount and condition of his property, with some other things, perhaps. The capability of men in health to form correct judgment in such matters is no doubt very unequal, and, when there is no inherent incongruity in the will itself, and no just ground to suspect improper in-

Ex'r of Converse *v.* Converse.

fluence, juries are, and perhaps should be, very liberal in sustaining testamentary dispositions.    But there must undoubtedly be some limit.   When one is confessedly in a condition to be constantly liable to commit the most ludicrous mistakes, in regard to the most simple and familiar subjects, he ought not to and cannot make a will.

Judgment affirmed.