ROBERTS *v.* BARKER.

The report of a referee should state facts, and not the evidence on which they are found.

Where a person, although not positively *non compos* or insane, is yet of such great weakness of mind as to be unable to guard himself against imposition, or to resist importunity or undue influence, equity will interfere.

BILL IN EQUITY to annul a mortgage, enjoin its foreclosure, and for an account. Facts found by a referee. December 27, 1871, the plaintiff owned an undivided half, in common with his brother Jeremiah, of 120 acres of land in Farmington, and on that day executed the mortgage in question to the defendant to secure the payment of certain promissory notes made by Jeremiah for money loaned to him by the defendant, and signed by the plaintiff as

surety. The plaintiff is over 77 years of age, was never married, and has always lived with Jeremiah, by whom he has been supported and cared for. He has never worked for wages, nor by his own business or earnings acquired any property. He has worked more or less, according to his inclination, on the farm of Jeremiah, without wages, receiving only his board, lodging, clothing, and occasional small sums of spending-money. He is a man of good habits, but has always been mentally infirm, and by reason thereof incapable of transacting any business of importance. His property has been managed and controlled by Jeremiah, who has received the avails of it. Jeremiah always treated the plaintiff kindly, and the two brothers have been as much attached to each other as persons in the same relation usually are. The plaintiff always regarded Jeremiah with entire confidence, and was as much under his control and as obedient to all his requests as is ordinarily the case between a child of tender years and his father. Large quantities of wood and timber were cut upon the mortgaged premises, and sold by Jeremiah, between 1870 and 1876. The brothers were not in partnership in this business, and the plaintiff never received any of the avails. The defendant had full knowledge of all these facts. Jeremiah and the defendant married sisters. The defendant, for a great many years, has been in the habit of lending money to Jeremiah upon real and personal mortgages, and in this way has absorbed much of his estate. Jeremiah has been for many years heavily indebted to the defendant, and perhaps is so now. There are many transactions and many notes and accounts unsettled between them. Jeremiah's relations with the defendant have been such that the latter has acquired much influence and has exercised considerable control over him. Shortly prior to the execution of the mortgage, the defendant was insisting upon further security for Jeremiah's indebtedness, and told him that he must get the plaintiff to mortgage his half of the land, and that if he did not do so he should bring a suit against him (Jeremiah), and attach all he could find. By these influences Jeremiah was induced to procure his brother's mortgage. He told the plaintiff of the defendant's threats, and that he must give the mortgage. The plaintiff objected, and was so much disturbed as to shed tears. Jeremiah again told him that he must do it, and the plaintiff finally consenting, Jeremiah carried him to the defendant's house, where a brother of the defendant drew up the mortgage, and the plaintiff signed it. The plaintiff had intelligence enough to know what he was about; that he owned the property, and that he did not wish to mortgage it; and that he received no consideration for so doing; but he had not sufficient firmness of mind to resist the will and command of his brother. The execution of the mortgage was not the plaintiff's voluntary act, but was procured by the contrivance of the defendant; and the referee says, " in my opinion should be annulled and cancelled."

The defendant has commenced a foreclosure under G. L., c. 136, s. 14.

Between 1870 and 1876 Jeremiah cut from the premises and sold wood and timber, the net avails of which, amounting with interest to $1,886.50, the defendant received. The referee reports that the plaintiff is entitled to a decree for one half of that sum.

The plaintiff's counsel, in his opening, having stated that his client was of weak mind and incapable of doing business, and capable of being unduly influenced, the defendant objected to the maintenance of the suit because it was prosecuted in the name of the plaintiff without the intervention of a guardian. The objection was overruled, and the defendent excepted.

The defendant moved that the report be recommitted to the referee, for the purpose of stating evidence. The motion was denied, and the defendant excepted.

*Worcester & Gafney*, for the plaintiff.

*George N. Eastman*, for the defendant.

BINGHAM, J. The motion to recommit for the purpose of stating the evidence was properly denied. The referee's report should state facts, and not the evidence on which they are found. Equity watches with jealous care every attempt to deal with persons of unsound mind, and when from the nature of the transaction there is not evidence of entire good faith, or the undertaking is not seen to be just in itself, or for their benefit, it is set aside, or made subservient to their just rights and interests. 1 Sto. Eq. Jur., s. 228. Equity, also, on grounds of public policy, often acts, in cases of confidential or fiduciary relations between the parties, as a protection against the effects of overweening confidence, self-delusion, and the infirmities of hasty and precipitate judgment, even if no intermixture of deceit, imposition, overreaching, unconscionable advantage, or other mark of direct and positive fraud exists (1 Sto. Eq. Jur., ss. 307, 308) ; for instance, such relations as are found between parent and child, or brothers and sisters. Sto. Eq. Jur. (11th ed.), ss. 309, 309 *a*, 309 *b* ; *Todd* v. *Grove*, 33 Md. 188 ; Kerr Fr. 193. The same doctrine has been applied to persons of weak understanding though not *non compos* strictly, yet unable to guard themselves against imposition, or to resist importunity or undue influence. 1 Sto. Eq. Jur., ss. 234, 234 *a* ; *Shaw* v. *Dixon*, 6 Bush. (Ky.) 644 ; *Lavette* v. *Sage*, 29 Conn. 577.

However this may be, when confidential relations, imbecility of mind, old age, and an unconscionable transaction come together, not by the voluntary act of the plaintiff, but by the overpowering force of the stronger mind of his brother, impelled by the threats and contrivance of the defendant, for his advantage and to the injury of the plaintiff, it does not require the citation of authorities to hold that such a transaction should be annulled in all its parts.

Every person is to be deemed of unsound mind who has lost his memory and understanding by old age, sickness, or any mental infirmity that renders him incapable of transacting his business and of managing his property. *Dennett* v. *Dennett*, 44 N. H. 531, 537; *In re James Barker*, 2 Johns. Ch. 232; *Converse* v. *Converse*, 21 Vt. 168.

The relations existing between Jeremiah and the plaintiff were those of confidence and trust. Jeremiah had always managed his property and received its avails for him, as his brother and trustee by consent. The defendant must have known this when he was procuring Jeremiah to pay him the wood-money of the plaintiff, and received it charged with the trust, and is liable to account for it. Such a decree as equity requires will be rendered for the plaintiff at the trial term.

*Case discharged.*

CARPENTER J., did not sit: the others concurred.