WILLIAM LANCASTER *vs.* CHARLES E. ALDEN, Executor.

PROVIDENCE—MAY 24, 1904.

PRESENT: Stiness, C. J., Tillinghast & Douglas, JJ.

(1)  *Wills.  Undue Influence.*

In an appeal from the probate of a will, testimony examined and finding of
jury upon question of undue influence disapproved.

(2)  *Wills.  Mental Capacity.*

In an appeal from the probate of a will, testimony examined and finding of
jury upon question of testatrix's mental capacity disapproved.

(3)  *Wills.  Evidence.  Immaterial Issues.*

A witness can not be cross-examined as to any fact which is collateral and
irrelevant to the issue, merely for the purpose of contradicting him by other
evidence.   A party having cross-examined a witness as to immaterial mat-
ters is bound by his answers.

(4)  *Wills.  Evidence.*

The fact that a person was engaged at the time of the execution of a will in an
illegitimate business does not tend to show that he was either incompetent
to make a will or unduly influenced in the making thereof.

PROBATE APPEAL.   Proponent's petition for new trial
granted.

TILLINGHAST, J.   The evidence in this case very strongly
preponderates against the verdict upon all of the issues passed
upon by the jury.

(1)     As to the first special finding of the jury, viz.: "That the
instrument in writing, purporting to be the last will and testa-
ment of Mary F. Dawley, was the result of undue influence
exerted upon her by Charles E. Alden," there is practically
no evidence to sustain it.

It is true that said Alden was quite friendly with Mrs.
Dawley; that he did considerable work for her in his capacity
as a contractor and builder between July, 1897, when he first
became acquainted with her, and the time of her death, and
that he occasionally aided her in matters of business.   But
there is neither any direct evidence that he ever attempted in
any way to influence her in regard to the making of her will,

nor are there any circumstances shown in evidence from which the jury were warranted in inferring the existence of any such influence having been exerted upon her by him. The mere fact that the testatrix left all of her property—with the exception of a few nominal sums which she bequeathed to her relatives—to said Alden is not sufficient to show that any undue influence was exerted upon her by him in the premises, nor do we think it furnishes any evidence in support of said finding, in view of the explanation of the gift which appears in her will, namely, that "Said Charles E. Alden has been kind to me, has helped me when my relatives neglected me; has lent me assistance that I can never repay, so I leave all my possessions to him," and also in view of the fact that she was quite largely indebted to him when the will was made.

It is also to be noted, in this connection, that the testatrix left no issue, that she was never on intimate terms with her father, the contestant in this case, he having paid no attention to her or done anything whatever for her support since she was three years old. Indeed, he himself testifies that he had never seen her since she was of that age. It is also to be noted that the testatrix was not on intimate terms with any of the members of her father's family.

We think the finding of the jury upon said issue, therefore, in view of the evidence, must have been based upon conjecture or suspicion merely, or else that it was the result of prejudice; and hence it should not be allowed to stand.

In what we have thus said regarding the insufficiency of the evidence to sustain said finding of the jury, we have not overlooked the rule as announced by this court in *Mullen* v. *McKeon*, 25 R. I. p. 305, viz.: that: "Where the will is unreasonable in its provisions and inconsistent with the duties of the testator with reference to his property and family, or what the civilians denominated an 'inofficious testament,' this of itself will impose upon those claiming under the instrument the necessity of giving some reasonable explanation of the unnatural character of the will, or, at least, of showing that its character is not the offspring of mental defect, obliquity, or perversion." The burden thus referred to is un-

doubtedly devolved upon the devisee and legatee under this will, he being a stranger in blood and family ties to the testatrix. But the explanation given in the will itself, together with the circumstances appearing in the evidence as aforesaid, clearly sustains said burden, and hence the rule referred to is satisfied.

(2)    As to the second special finding of the jury, namely: "That the said Mary F. Dawley was of unsound mind on the 4th day of November, 1898, at the time of the execution by her of the instrument purporting to be her last will and testament," there is no sufficient evidence to support it.

The facts relating to the execution of the will are these: On November 4, 1898, the testatrix was seized with an attack of acute indigestion, causing functional trouble of the heart, which led her to believe that she was about to die. She thereupon hastily commenced to draw the will in question with her own hand, and presently sent for two of her near neighbors, with whom she was well acquainted, to come in and witness the execution of the will. When they arrived they found her sitting at the desk still writing, and when she had finished she requested them to read it and sign it as witnesses, which they did. After reading it, Emily J. Manley, one of the witnesses, asked Mrs. Dawley who this man was (that is, the man named in the will as devisee), and she said it was the man who had been improving her property, and that he had been a true friend to her. The other witness, Mrs. Lizzie Sheldon, testifies that "she told me that she was very much indebted to Mr. Alden, and was going to take that way to pay him. That it was the only way she saw of paying her debt."

These witnesses both testify that Mrs. Dawley was of sound and disposing mind and memory at that time.

Many other witnesses were called by the proponent, most of whom had known Mrs. Dawley well and intimately, and several of whom had had frequent business relations with her covering quite a long period, and their uniform testimony was to the effect that she was always regarded as a bright, active, and intelligent woman, particularly keen and shrewd

in business affairs, and of unquestioned and undoubted mental capacity.

After the death of her husband, which occurred in 1895, she continued the business which he left—that of storekeeping in a small way—up to the time of her death. She kept her own books of account, prepared and sent out all bills to her customers, and displayed a special aptitude for commercial transactions. In addition to this she did her own housework, and kept two cows which she milked and cared for without assistance. She was always very prudent and diligent, and displayed good judgment in the management of all her affairs.

Dr. George H. Kenyon, a well-known and highly respectable physician of large experience, was Mrs. Dawley's physician at the time of the attack referred to, and had treated her occasionally for ten or twelve years next before that time. He testified that she was thoroughly frightened, and afraid she was going to die at that time, but that she recovered in two or three days afterwards; that during his acquaintance with her he never saw any indication of any mental derangement or unsoundness, beyond what any person would have that was ill. He also testified that Mrs. Dawley had a strong mind during all the time that he knew her, and that she was a very positive woman and liked to have her own way.

After the will was executed it was handed to said Emily J. Manley, one of the subscribing witnesses thereto, by Mrs. Dawley, who kept it for some weeks, when the latter called for it and it was returned to her. She lived nearly three years after the will was executed but never made any change therein, although it was under her control during all this time. And this circumstance materially strengthens the case in favor of the proponent. See Schouler on Wills, 2d ed. § 239, last paragraph, and cases in n. 7. See also *Converse* v. *Converse*, 21 Vt. 168, and *Kinne* v. *Kinne*, 9 Conn. 102, as to what constitutes sufficient capacity to make a will.

The testimony relied on by contestant, as tending to show unsoundness of mind, was mainly to the effect that the testatrix occasionally during her life had "spells," so called by the witnesses, during which she showed signs of lunacy. That

during these "spells" she would laugh and cry, rave, and swear, and behave in a very unnatural and peculiar manner.

The witnesses who testify to these "spells," however, attribute them in the main to the fact that Mrs. Dawley was a very nervous, high-strung woman, of violent temper, and a woman who had generally insisted on having her own way. And that when she got mad she would have one of these spells. But they all admit that outside of these "spells," which according to most of the testimony only occurred at quite long intervals of time, she was a woman of sound mind and very good business ability. Some of the witnesses for the contestant testified that Mrs. Dawley occasionally drank to excess, and when in this condition she showed signs of lunacy. Others testified to the effect that she was hysterical on the occasions referred to.

The "spells" relied on, however, from whatever cause they arose, only occurred occasionally, and were only of such a character, at the worst, as to temporarily render her incompetent to transact business. And it is well-settled law that unusual and irregular habits, known as personal eccentricities, do not incapacitate one from making a will, unless they have been indulged in to such an extent as to amount to insanity. A. & E. Ency. of L. vol. 25, 1st ed. 988.

In the case at bar it is uncontradicted that at the time when the testatrix made the will in question she was not suffering from any of the disturbing influences referred to by the witnesses for the contestant, but, on the other hand, as already stated, it is clearly shown that she was then of sound and disposing mind and memory, and hence competent to make a will. The third special finding of the jury, therefore, namely, that "On the 4th day of November, 1898, at the time of the execution by her of the instrument purporting to be her last will and testament, Mary F. Dawley was suffering from one of the occasional spells of mental illness or incapacity shown in evidence by witnesses for the contestant," was wholly without evidence to support it.

(3)    During the trial of the case counsel for contestant, in cross-examination of the witness Charles E. Alden, asked him if

he did not, on a certain occasion when a circus was exhibiting in the neighborhood, "tend door at Mrs. Dawley's store." Answer: "I did not. Q ·Don't you know you were the party that stood and would let in about so many men at a time, and after they had received their refreshments, you would let them out and let in another gang? A. Nothing of the kind."

Subsequently, in rebuttal, counsel for contestant was permitted, against objection, to contradict the witness Alden as to said matter by asking the witness Annabelle Lancaster the following questions: "Q. Do you remember the time the circus was there? A. Yes. Q. Was it there Sunday? A. Yes. Q. I will ask you if Mrs. Dawley was selling beer that Sunday? (Objected to by Mr. Champlin.) Q. Was Mr. Alden tending door for her on this Sunday or was Mrs. Dawley tending door? A. Yes. Q. How long did he tend? A. While I was there, he tended door all the time. Q. How long were you there? A. About three hours, I think."

To the admission of this testimony proponent's counsel excepted, on the ground that the matter brought out in cross-examination, as aforesaid, was new and immaterial, and hence that counsel for contestant had made Mr. Alden his own witness and could not offer testimony in rebuttal to contradict him.

Counsel for proponent now also contends that the testimony was impertinent, as it did not tend to prove either insanity in Mrs. Dawley or undue influence exerted upon her in the making of her will. Also, that it did not appear when the alleged incident happened, and hence that it may have happened after the making of her will. He also argues that the testimony was offered to prejudice the jury, in that it spread before them some of the details of an alleged unlawful transaction.

We think the evidence was improperly admitted. A witness can not be cross-examined as to any fact which is collateral and irrelevant to the issue, merely for the purpose of contradicting him by other evidence. *Hildeburn* v. *Curran*, 65

Pa. St. 59–63; Rice on Ev. p. 632. "A party having cross-examined a witness as to immaterial matters, is bound by his answers, and it is error to allow a contradiction." Rice on Ev., *supra; Winton* v. *Meeker*, 25 Conn. 456; *Fletcher* v. *B. & M. Railroad Co.*, 1 Allen, 9; *Com.* v. *Cain,* 14 Gray, 7; *Gandolfo* v. *Appleton*, 40 N. Y. 533; See also cases collected in Rice on Ev. on page 633. "To enforce or recognize any other rule," says Mr. Rice, *supra*, p. 633, "would complicate the issues, and lead to an interminable collateral investigation of topics entirely foreign to the case, and in no way raised by the pleadings."

Whether the witness Alden had acted in the capacity of door-keeper for the testatrix on some Sunday, and thereby aided her in violating the liquor law, was not material to any of the issues raised, and hence the contestant should not have been allowed to offer testimony tending to impeach the witness on that point. Moreover, it does not appear whether the transaction referred to occurred before or after the making of the will in question.

(4)     In this connection it is pertinent to remark that testimony bearing upon the question as to whether the testatrix kept and sold intoxicating liquors in violation of law had no legitimate bearing upon any of the issues involved in the case. The fact that a person was engaged in an illegitimate business at the time of making his will does not show or tend to show that he was incompetent to make a will, or that he was unduly influenced in the making thereof. And as the natural effect of such testimony would be to prejudice the jury against the will, it should not be admitted in a case of this sort.

For a full and clear exposition of the law bearing upon the questions of mental capacity and undue influence in cases of this sort, see the able opinion of Endlich, J., which was affirmed by the Supreme Court of Pennsylvania in the case of *Caughey* v. *Bridenbagh,* 57 Atl. Rep. 821, decided March 14, 1904.

Proponent's petition for new trial granted.

*F. P. Owen,* for appellant.

*Frank H. Bellin and Irving Champlin,* for appellee.