Coös, �months⎞
Dec. 6, 1910. ⎠

BOUTHET, *Adm'r,* *v.* INTERNATIONAL PAPER CO.

A master who knowingly maintains his appliances in an abnormal condition is liable to an injured servant who was not informed of the peculiar danger and is not chargeable with knowledge of its existence.

The fact that a common laborer in a mill had at some time seen a belt wind around a shaft while he was adjusting it does not conclusively prove that he understood and appreciated the risk of injury incident to such work.

The opinion of a trained mechanic as to the average man's appreciation of an obscure and transient danger incident to work upon machinery does not conclude the party who calls him as an expert witness, nor preclude the jury from availing themselves of their own knowledge upon that subject.

CASE, for negligently causing the death of Emerigile Rousseau, the plaintiff's intestate, who was killed by being caught in the belt

which drives the defendants' sawdust conveyor. Trial by jury and verdict for the plaintiff. Transferred from the September term, 1909, of the superior court by *Wallace*, C. J., on the defendants' exception to the denial of a motion for a nonsuit. The evidence tended to prove the facts hereinafter stated.

In the defendants' mill at the time in question there was a revolving shaft with a fixed pulley upon it, and some fifteen feet distant therefrom was another shaft equipped with a similar pulley, which when in motion operated a sawdust conveyor. The sawdust conveyor was not always in motion, and it was customary for the men, when starting it up, to place a belt upon a pulley on the revolving shaft and then upon the pulley that operated the conveyor. The belt when placed upon the pulley on the driving shaft and drawn back toward the conveyor pulley was liable to stick and snap back toward the revolving shaft and wind up on it, and such an occurrence was rendered more probable from the fact that the pulley on the conveyor shaft overhung the bearing in which the shaft ran. It was while Rousseau was attempting to do this work that he was caught in the belt, drawn upon the revolving shaft, and killed.

There was no evidence that Rousseau was notified of the danger by the defendants, or that it was ever spoken of in his hearing. He was a man twenty-two years old, of average intelligence, and had been in the defendants' employment for two years. For a year or a year and a half of the time he had acted as spare man, and in this capacity it was his duty to assist in putting on the belt. The conveyor had to be started up some days as often as three times, while at other times not oftener than once in three days. Rousseau had adjusted this particular belt many times. On the day of the accident, when he first attempted to place it upon the pulleys, it had pulled off the conveyor pulley and snapped back toward and under the revolving shaft. There was no testimony that he had ever seen the belt snap back and wind up on the revolving shaft, either when he was putting it on alone or when assisting others in doing so; but it appeared that this had occurred with most of the men who testified at the trial, when they were doing this work.

*Sullivan & Daley* and *Burritt H. Hinman* (*Mr. Hinman* orally), for the plaintiff.

*Rich & Marble* and *Drew, Jordan, Shurtleff & Morris* (*Mr. Marble* orally), for the defendants.

YOUNG, J. The conveyor pulley is on the end of the shaft. Consequently, if the belt sticks to the driving pulley hard enough

to pull it away from the man who is attempting to put it on the conveyor pulley, there is nothing to prevent it from winding up on the driving pulley, and, if it happens to catch him, winding him up in it. It is the danger peculiar to this condition of the defendants' instrumentalities of which the plaintiff complains.

It was the defendants' duty to do what the ordinary man would do under the circumstances to enable Rousseau to do his work in safety; but as the law is usually administered, it cannot be found that they failed to perform that duty unless this condition was an abnormal one, and the risk incident thereto one of which they did and he did not know. It is conceded it can be found that this condition was abnormal and that they knew of the risk incident thereto; consequently it can be found that they were in fault, if there is any evidence tending to prove that Rousseau did not know of it. The only knowledge of belts and the dangers incident to using them which Rousseau possessed was what he had acquired while working in the defendants' mill. Although he had seen this belt pull away from him on one or two occasions, he had never seen it wind up on the driving pulley as it did on the day of the accident. Notwithstanding the defendants knew that that was liable to happen, they never told him of it, and it is not common knowledge that such is the fact. From these facts it can be found that Rousseau neither knew nor was in fault for not knowing that if the belt happened to stick to the driving pulley he was liable to be caught in it and killed.

Although no one saw Rousseau when he was caught in the belt, he was seen only an instant before and at that time was doing his work in the usual way; consequently it can be found that he was free from fault.

2. It can be found that it was customary for the spare hand— the man who usually started the conveyor—to call on any of the men who worked in the room to help him start it, and that this had been the custom so long that if the defendants did not they ought to have known of it.

3. The jury therefore could find that Rousseau was acting within the scope of his employment at the time he was killed, even if it also found that the foreman told the spare hand to get some one other than Rousseau to help him start the conveyor; for if that instruction was given it was not communicated to Rousseau.

*Defendants' exception overruled.*

All concurred.

After the foregoing opinion was filed, on June 7, 1910, the defendants moved for a rehearing, and argument was invited upon the question of assumption of risk.

*Drew, Shurtleff & Morris* and *Rich & Marble* (*Mr. Morris* and *Mr. Marble* orally), for the motion.

*Sullivan & Daley* (*Mr. Sullivan* orally), opposed.

PEASLEE, J. It is argued that it conclusively appears that the deceased knew of and appreciated the danger. Is this the only conclusion reasonably to be arrived at upon a fair consideration of the evidence? It is to be borne in mind that the danger was an obscure one. It was not something which the ordinary man would see and understand upon an inspection of the work-place. The danger was a transient one, occurring at varying intervals and from causes not readily apparent to an ordinary laborer. The defendants' theory is, that because the application of the law of chances shows a preponderance in favor of the proposition that Rousseau had seen the belt wind up on the driving shaft, therefore it must be held as matter of law that he knew and appreciated the danger of being caught in and drawn along with the belt. If it is the law that in a case like this the rule of average is the only one that can be applied, and that a conclusion not based thereon would be mere conjecture, it would follow that Rousseau must have at some time seen the belt wind up when it snapped back. Must it be found from this fact that he understood and appreciated the danger? So far as the case shows, he was absolutely without experience on this subject. He is to be charged with knowledge of what he saw and of the conclusions reasonable men must draw from what he observed. Beyond this, the question must be left to be determined by the triers of the facts. It cannot be held that the likelihood of a person being caught and dragged by a belt in this way is one that men in general understand. There is nothing in the evidence to show that Rousseau had acquired such an understanding, but on the contrary, much that points to the conclusion that he had not. He had been employed in the mill as a laborer a year and a half. On occasions of varying frequence, he had been called upon to put this belt onto the pulleys. The knowledge he acquired was not that of a trained mechanic, but only that of a common laborer who sometimes did this particular piece of work. The danger he finally encountered was not frequently met with and apparently was not a subject of comment among his fellow-workmen. If it conclusively appears that Rousseau knew the belt might wind up on the driving shaft, it does not so appear that he understood and appreciated the danger in which this situation involved him.

The plaintiff's expert testified on cross-examination that in his opinion the only danger was that of being caught by the moving belt, and that any man ought to understand this was hazardous.

From this the defendant argues that there is nothing in the case for the plaintiff upon the issue of appreciating the danger. But on the question of what the average man would appreciate, the mill-wright of long experience is not an expert who can inform a jury so as to preclude them from using their own knowledge on the subject. On the contrary, they are the true experts on this subject; while he, because of his familiarity therewith, is not qualified as they are to accurately guage the average capacity to comprehend strange appliances and unknown forces. But if the expert's testimony is to be taken at its face value, it is not fatal to the plaintiff's case. In answer to an inquiry by the court as to whether he meant a man ought to understand he might be caught and dragged, or merely caught, he answered, "might be caught." Again, when asked if all that was needed was that the men be careful, he said they "must be using care and on their guard." This is the crux of the matter. Something beyond the care of the ordinary man was needed—something the ordinary man would not know was needed. Plainly enough, he was seeking to describe a situation which might well be found to call for warning or instruction to the men set at the work in question.

*Rehearing denied.*

All concurred.