Merrimack,  }
Jan. 7, 1913. }

## LOCKWOOD *v.* AMERICAN EXPRESS CO.

Certain evidence deemed sufficient to warrant a finding that personal injuries were caused by the negligence of the defendants' servant and that the plaintiff at the time of the accident was in the exercise of due care.

Where a railroad corporation leases to an express company the exclusive right to carry on an express business over its lines, agrees to furnish in its cars and stations facilities for the transportation and handling of goods and to give an adequate time for the loading and unloading of the same, and assents to the employment of certain of its servants as express agents and messengers upon condition that the express company shall be responsible for their acts in such capacity, it is not an independent contractor with reference to the handling of express matter at stations, so as to absolve the express company from liability for injuries occurring through the negligence of a servant so engaged.

A plaintiff in an action for negligence is only bound to make it appear more probable than otherwise that his injuries were caused as he alleges.

Requested instructions are properly denied when they are not applicable to the facts disclosed by the evidence, or when they are obscure and misleading, and tend to confuse the jury rather than to aid them in their deliberations.

CASE, for personal injuries. Trial by jury and verdict for the plaintiff. Transferred from the April term, 1912, of the superior court by *Plummer*, J.

The plaintiff's evidence tended to prove the following facts: The plaintiff was injured in an accident which occurred at the station of the Boston & Maine Railroad at Claremont Junction, on the evening of September 5, 1910. One Ramsey was the station agent of the Boston & Maine Railroad and also the agent of the defendants at that place. One Perkins, who was employed by the railroad, was, with the knowledge and assent of the defendants, in the habit of assisting Ramsey during the daytime in handling express matter. Ramsey left the station every afternoon at five o'clock, and from that time Perkins was the only person there whose duty it was to handle, and who customarily handled, the defendants' express matter. On the day of the accident, Ramsey stopped work as usual at five o'clock, leaving Perkins to handle the express matter on incoming trains that night. Train No. 409, which carried express matter that night, came into the station on the east side from the Claremont division at about nine o'clock. The express matter was destined for stations further north on the Passumpsic division and had to be transferred to train No. 33, going north over that division from the west side of the station. The latter train was due at about nine o'clock, but on the night in question it did not arrive until a few minutes later. It had just arrived when a freight train moving in a northerly direction came into the station on the east side from the Claremont division. The plaintiff was a brakeman on this train, being employed by the Boston & Maine Railroad, and in the performance of his duty was riding on a running-board attached to the left side of the pilot of the locomotive. Along the east side of the station buildings and platform were five lights, and the headlight of the locomotive cast its rays thirty feet or more up the track. While the train approached and was passing the station, the plaintiff was looking up the track, but saw nothing upon it. The first he knew of the presence of an obstruction was when he was struck by a truck and injured. He then saw that it was a truck owned by the defendants

and loaded with express matter, and that Perkins had hold of the tongue of the truck and was endeavoring to pull it out of the way. The plaintiff had no opportunity to avoid the accident before he was struck. The defendants had three trucks at the station. When not in use and unloaded, they were left under a shed at the north end of the annex; but when loaded and not in use on the platform, they were kept in the annex, which was a building just south of the shed and between it and the station proper. The platform in the vicinity of the shed sloped in an easterly and southerly direction and away from the place of the accident, which was about forty feet north of the northerly posts of the shed. The platform at the place of the accident sloped somewhat toward the easterly track; and because of this, trucks left unchained were liable to be moved by the jar of passing trains. The defendants were aware of this liability, had provided chains to guard against such an occurrence, and had instructed Perkins not to leave the trucks unchained. Nobody was on the platform at the time of the accident except Perkins and Canty, the baggage master. Perkins was there doing express work, and Canty was then starting, or had started, for train No. 33 to do baggage work. While awaiting the arrival of train No. 33, Perkins left the truck unchained so that it was set in motion by the jar of incoming trains, or in preparing the truck to cross the platform he backed it in front of the freight train just as it was passing.

So much of the contract between the Boston & Maine Railroad and the defendants as is material to the questions here raised is reported in the opinion.

The defendants' motions for a nonsuit and the direction of a verdict in their favor were denied, and they excepted. The following requests of the defendants for instructions were denied except in so far as they were given in substance in the charge of the court, and to such refusal to charge the defendants excepted:

"6. If the plaintiff was riding on the cowcatcher of the engine merely for his own convenience, in order to get to his home which was near the station, the freight train on which he had been employed as a brakeman having been broken up back by the roundhouse, then, as he was riding in an obviously dangerous place, he is guilty of contributory negligence.

"7. If the plaintiff was riding on the cowcatcher of the locomotive, even in the performance of his duties, it was his legal duty when riding in that dangerous situation to keep a lookout ahead

for obstructions with which the locomotive might come in contact; and if he failed so to do, he was guilty of contributory negligence and cannot recover.

"9. As the plaintiff at the time of the accident was riding in a place of obvious danger, he should have exercised care for his own safety by looking ahead for obstructions on the track with which he might come in contact; he had no right to rely solely upon other persons not being negligent.

"13. The mere fact that Perkins was attending to the express work that night is not proof that he had anything to do with the truck at any time shortly before the accident, or that any conduct of his caused the truck to be on the track.

"15. The fact that Perkins was seen to take hold of the handle of the truck and pull it away from the track at some time after the accident occurred does not in any way tend to prove that his conduct or act caused the truck to be upon the track at the time of the accident.

"18. If Perkins was hired and paid by, and was subject to the control of, the railroad, and if the express company had not hired him, did not pay him, and had no power to discharge him, then he was not a servant of the defendant and the defendant is not responsible for his conduct or his acts.

"19. If the railroad had contracted with the defendant to furnish it transportation and services and facilities at stations in handling express matter, and if at the Claremont station the railroad employed and paid a laborer to handle express matter in connection with his other duties as a railroad employee, then the railroad is an independent contractor for whose conduct and for the conduct of whose servants the defendant is not liable or responsible.

"20. If the railroad was such an independent contractor and in performance of its contract employed Perkins to carry out in part the duties of the railroad under such contract, the express company cannot be held for any act of Perkins, no matter if such act was performed in a negligent manner and in the course of handling express matter.

"21. If the jury find that Perkins was employed by the railroad and was at the same time a servant of the defendant, nevertheless as such railroad man he was a fellow-servant of the plaintiff; and if his negligence caused the plaintiff's injuries, the defendant can-

not be held liable therefor, because such injuries were caused by the plaintiff's fellow-servant.

"22. If the plaintiff was injured through the negligence of a person who was employed jointly by the railroad which employed the plaintiff and by the defendant, such person was a fellow-servant of the plaintiff, and the defendant is not liable for injuries to the plaintiff caused by the fellow-servant."

The defendants also excepted to the charge as given to the jury on the question of agency, because it omitted from their consideration the question whether or not the railroad, in the handling of express matter at Claremont Junction, had assumed that duty as independent contractors.

*Martin & Howe* (*Mr. Howe* orally), for the plaintiff.

*Austin M. Pinkham* (of Massachusetts) and *Elwin L. Page* (*Mr. Pinkham* orally), for the defendants.

BINGHAM, J.   It is unnecessary to again recount the evidence on the question of liability.   A sufficiently adequate account of it is given in the statement of the case.   From it, the jury were warranted in finding that the plaintiff was in the exercise of due care at the time he received his injury; that the accident was caused by the negligence of Perkins while he was in the control and management of the defendants' express truck—that he either negligently left it unchained on the station platform where the jar of approaching trains caused it to run back upon the track, or negligently backed it upon the track in front of the freight train just as it was passing; and that he was the agent of the defendants in the actual conduct of their business at the time of the accident, and for whose negligence they are responsible, unless the contract of May 1, 1907, made the Boston & Maine Railroad an independent contractor as to the work which Perkins did in handling express matter at the Claremont Junction station.

It appears that in May, 1907, the railroad entered into a written contract with the defendants, wherein it leased to them the exclusive right to carry on the express business on its passenger trains over all lines which were then or might be thereafter owned, leased, or operated by it, and assumed certain obligations for carrying the contract into effect.   And we are of the opinion, that if the contract can be said to require the railroad to assume full control

and direction of the business of loading, unloading, and caring for the defendants' express matter at stations such as Claremont Junction, that Perkins, who was a railroad employee, could not be found to be an agent of the defendants from the fact that he handled express matter at that station with the defendants' knowledge and approval. The question is therefore presented whether the written contract is open to such a construction.

In it the railroad leases to the defendants (1) "the exclusive right and privilege . . . to control, conduct, and transact all the express transportation business . . . over and upon the passenger trains of said railroad" then or thereafter controlled and operated by it. To enable the defendants to control, conduct, and transact this business, the railroad agreed (2) to furnish at its own expense, for the use and benefit of the defendants, "sufficient space . . . in the baggage cars, or other cars especially set apart for the exclusive use of the Express Company, to accommodate the business of the Express Company and to haul same with speed, . . . and to allow the Express Company reasonable time in which to load and unload such goods and valuables as it may have to load and unload into or from cars on the various trains of the . . . railroad at each of the stations at which the trains are scheduled to stop," and to "warm and light such cars"; (3) to furnish the Express Company "all requisite, reasonable, and necessary facilities, conveniences, and rooms in or connected with its stations and depots, for the care and handling of its express matter, and the loading and unloading thereof, into and from the cars, with a view to the prompt dispatch of its business"; (4) that the "Express Company may from time to time employ station agents and baggagemen of the . . . railroad to act as agents and express messengers of the . . . Express Company, by and with the consent and approval of the proper official of the railroad; and the Express Company agrees that it shall . . . be solely and entirely responsible for all the acts of such agents and baggagemen by them done or committed in the scope of their employment as such express agents or express messengers, compensation for any such service to be paid to the agents or baggagemen direct."

These are the only provisions of the contract that are material in considering the question raised. Their meaning as applied to the situation here under consideration is not doubtful or obscure. It is apparent, when they are read in the light of the surrounding

circumstances, that the railroad did not undertake to transact the whole or any part of the defendants' express business either on passenger trains or at stations, but leased, so far as it legally had the power, the exclusive right to control, conduct, and transact such a business to the defendants. In subdivision 2 of the contract, the railroad expressly agrees that the defendants shall have adequate time in which to load and unload their express matter into and from cars at stations. If it was understood that the railroad and not the Express Company was to do this work, there was no occasion for the insertion of this provision. The only reasonable conclusion to be drawn from it is that the defendants themselves were to do the work, and the railroad was to allow them adequate time in which to do it. In subdivision 3, the "facilities, conveniences, and rooms" which the railroad were to furnish the defendants were such as were "requisite, reasonable, and necessary" to enable them to care for, handle, load, and unload their express matter. For these accommodations no additional compensation was to be paid; but for "special accommodations" in the way of "rooms set apart for the exclusive use of the Express Company," and for heating and lighting the same, an additional charge was provided for.

It would be wholly unreasonable to suppose that by these stipulations the railroad became an independent contractor vested with full control of the business of handling, caring for, loading, and unloading express matter at stations. If standing alone, and without reference to any other provisions of the contract, these stipulations could be said to contemplate the furnishing of men to the defendants whom they could control and direct in this work at stations, it is evident that they are not here capable of even such a construction; for in subdivision 4 of the contract the railroad employees whom the defendants may employ are limited to station agents and baggagemen on trains, and they can employ them only after obtaining the approval of the proper official of the railroad and upon the agreement that they shall be solely responsible for all acts of such employees done by them within the scope of their employment as express agents or express messengers. Indeed, there is no evidence in the case from which it could be found that the railroad had entered into a contract with the defendants whereby they assumed the duty of controlling, managing, and directing the business of handling and caring for express matter

at Claremont Junction.  Perkins was either the defendants' agent
or a mere intruder.  The evidence tended to show the former.

The contention is also made that on the evidence the conclusion
of the jury—that the negligent conduct of Perkins was the cause
of the accident—is mere conjecture, it having appeared that the
station platform was a public place where people might come to
meet and take trains.  But when it is recalled that Perkins was
present upon the platform in the control and management of
the defendants' truck at the time of the accident, and that the
evidence does not disclose that any one else was there except Canty,
the baggageman, it is reasonably certain that the plaintiff has
made it appear more probable than otherwise that the cause of
the accident was as he contends.  The plaintiff was not bound
to exclude all other possible causes.  He fulfilled the legal require-
ment when he made it appear more probable than otherwise that
the fact was as he claimed it.  *Boucher* v. *Larochelle*, 74 N. H.
433, 434.

For the reasons above given, the denial of the defendants' motions
for a nonsuit and a verdict, the refusal of their 19th and 20th
requests for instructions, and the overruling of their exception to
the charge were not error.

As to the 6th, 7th and 9th requests for instructions, it is suffi-
cient to say that they amount to nothing more than a request
for a charge that on the evidence the jury as reasonable men could
not find that the plaintiff was in the exercise of due care—a question
already passed upon.

The 13th, 15th, and 18th requests were misleading and would
have confused rather than aided the jury in their deliberations.
In the first one the court was asked to tell the jury what was not
true, as there was sufficient evidence from which they could find
that Perkins was in charge of and had loaded the truck just before
the accident occurred.  The second of these requests misstated
the evidence on which it was based.  The third one, so far as it
involved the doctrine of agency, was obscure and misleading,
and so far as it concerned the independent contractor theory has
already been considered.

The 21st and 22d requests had no application to the case.  The
plaintiff was not a servant of the defendants; consequently the
defendants' servants were not fellow-servants of the plaintiff.

*Exceptions overruled.*

All concurred.