## ST. LOUIS-S. F. RY. CO. v. LANDERS.

No. 15960—Opinion Filed Dec. 15, 1925.

Rehearing Denied Feb. 23, 1926.

**1. Master and Servant—Railroads—Liability Under Federal Employers' Liability Act.**

Under the Federal Employers' Liability Act the action lies for injury or death resulting in whole or in part from the negligence of the officer, agents, or employes of such carrier.

**2. Trial — Instructions — Sufficiency as a Whole.**

Where the instructions of the court, taken together and as a whole, correctly state the law, no error can be successfully predicated upon an allegation that the court failed to include in any one particular instruction all the law applicable to the case.

**3. Master and Servant—Injuries to Switchman—Assumption of Risk a Jury Question.**

Whether a switchman injured while acting in the line of his duty when he stepped upon a loose rock in alighting from a moving train at a switch stand assumed the risk of injury, held, under the evidence, for the jury.

**4. Same.**

An employe is not regarded as having assumed a risk attributable to the employer's negligence until he becomes aware of it, unless it is so plainly observable that he must be presumed to have knowledge of it. An employe is not obliged to exercise care to discover dangers resulting from the employer's negligence and which are not ordinarily incident to the employment.

(Syllabus by Pinkham, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Pontotoc County; J. W. Bolen, Judge.

Action by Warren Landers against St. Louis-San Francisco Railway Company to recover damages for personal injuries. From judgment in favor of plaintiff, defendant brings error. Affirmed.

E. T. Miller, Stuart, Sharp & Cruce, and Ben Franklin, for, plaintiff in error.

W. N. Maben, for defendant in error.

Opinion by PINKHAM, C. The parties to this action will be referred to as plaintiff and defendant, as they appeared in the trial court.

The plaintiff, Warren Landers, instituted his action in the district court of Pontotoc county to recover damages for personal injuries sustained by him while in defendant's employ as a switchman. After issues had been joined, a trial was had resulting in a verdict in favor of the plaintiff and against the defendant in the sum of $12,500. Defendant's motion for a new trial was overruled and exception reserved. Judgment was rendered in accordance with the verdict, and the cause comes regularly to this court upon defendant's appeal by petition in error and case-made attached.

For reversal of the judgment, defendant assigns as error: First, that the trial court erred in his instructions to the jury; second, the court erred in refusing to give to the jury instructions requested by the defendant; third, the verdict of the jury is not sustained by sufficient evidence; fourth, the evidence of both plaintiff and defendant shows that plaintiff's injuries were the result of an assumed risk; and fifth, the verdict of the jury is excessive.

The evidence discloses that the plaintiff, a man about 33 years of age, had been engaged in railroading and railroad work for about 14 years, and as a switchman for some

seven years, and had been a switchman in defendant's yard, where the accident occurred, for three years. On the occasion of the accident, he went to work at 4 o'clock in the morning. His duties required him to alight from a moving train at a certain switch stand in the defendant's yards. In performing this duty, at about 5:30 o'clock, just as it was growing light, he stepped upon something loose and fell. One of his arms fell across the rail and was cut off between the elbow and wrist. The evidence shows, without conflict, that for a number of feet about and around the particular switch stand, at which place the plaintiff alighted, in the line of his duty, there was an accumulation of rocks described by all of the witnesses as being from the size of "your fist" to smaller sizes. The plaintiff testified that he did not know of the accumulation of rocks about the switch stand and that he did not see them. He stated that he did not know what he stepped on, but presumed it was a rock—something loose—that caused him to be thrown on the track.

It is contended by the defendant that, as the record discloses, both parties were engaged in interstate commerce at the time of plaintiff's injury, that the case is governed exclusively by the Act of Congress known as the Federal Employers' Liability Act (April 22, 1908, as amended April 5, 1910), and that paragraph No. 1 of the court's instructions to the jury is in conflict with the provisions of the federal act, and the case of Seaboard Air Line Railway v. Horton, 233 U. S. 492, is cited in support of the proposition.

By the first section of said act, a right of action is conferred (under conditions specified) for injury or death of the employe "resulting in whole or in part from the negligence of any of the officers, agents, or employes of such carrier, or by reason of any defect or insufficiency due to its negligence in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment."

It is settled that since Congress, by the Act of 1908, took possession of the field of the employer's liability to employes in interstate transportation by rail, all other laws upon the subject are superseded. Second Employers' Liability Cases, 223 U. S. 1, 55.

It is said in the Seaboard Case, supra:

"It was the intention of Congress to base the action upon negligence only, and to exclude responsibility of the carrier to its employes for defects and insufficiencies not attributable to negligence."

It is further said in the opinion:

"The plain effect of these words 'due to its negligence' is to condition the liability upon negligence."

It appears in the Seaboard Case a locomotive engine was placed in the plaintiff's charge; that it was equipped with a certain water guage, a device attached to the boiler head, for the purpose of showing the level of the water in the boiler, and consisting of a brass frame, or case, enclosing a thin glass tube which communicated with the boiler above and below, in such manner that the tube received water and steam direct from the boiler and under the full boiler pressure. In order to shield the engineer from injury in case of the bursting of the tube, a piece of ordinary glass, known as a guard glass, should have been provided, this being a part of the regular equipment of said water gauge. The plaintiff was an experienced locomotive engineer, and according to his own testimony was fully aware of the function of the guard glass and of its importance to his safety. He testified that when he took the engine out on his first trip, he observed that the guard glass was missing; that upon his return he reported this to the defendant's roundhouse foreman and asked him for a guard glass; that the foreman stated there were none in stock at that place and that he would send and get one, and that plaintiff should meanwhile run the engine without one, and that having ineffectually endeavored to get a guard glass from another source, the plaintiff proceeded to run the engine with the use of the unguarded water gauge until a certain time thereafter, when the glass exploded and flying fragments struck him in the face, upon which his claim for damages was based.

Under this state of facts, an instruction given by the trial court to the effect that the absence of the guard glass was conclusive evidence of defendant's negligence was held to be error.

However, the principal questions raised in the Seaboard Case, supra, pertain to the issues of assumption of risk and contributory negligence, and the opinion concludes that defendant was entitled to have a requested instruction offered by it given respecting the assumption of risk, and that as the charge actually given did not cover the same grounds, there was error.

The paragraph of the instructions complained of in the instant case is as follows:

"You are instructed that the defendant owed a duty to the plaintiff to keep its yard in a reasonably safe condition, so that

switchmen could alight from moving switch trains, with reasonable safety, and that if the defendant failed to perform this duty and such failure resulted in an injury to the plaintiff, which injury caused him damage, then you will find for the plaintiff unless you find for the defendant under other instructions given you."

The argument, as we understand it, is that the instruction in question ignores the element "due to its negligence" as provided in the federal act.

It must be conceded, as a matter of law, that before the plaintiff could recover in the instant case, it must appear that his injury was due to the negligence of the defendant, and a careful examination of the record before us discloses that this question of negligence was raised in the petition of the plaintiff and sufficiently appears by the evidence in the case, and, as we think, was submitted to the jury by the instructions of the court when those instructions are considered as a whole.

The trial court, in its preliminary statement to the jury, stated:

"Plaintiff represents that on account of the negligence and carelessness of the defendant and its agents and servants, as aforesaid, his arm was completely severed and permanently injured, as above set forth."

The third instruction given by the court is as follows:

"If you find that the car which the plaintiff was switching was interstate work, that is, hauling merchandise from one state to the other, then you are instructed that the defendant cannot escape liability entirely by the negligence of the plaintiff, but if you find that the defendant was negligent and that said negligence was the proximate cause of the injury of the plaintiff, but also find that the plaintiff was negligent, then you are instructed that the defendant would be liable in so far as the defendant contributed to said injury or in proportion to the negligence that the defendant contributed to said injury."

It thus appears that the attention of the jury was specifically directed to the necessity of a finding from the evidence that the injury sustained by the plaintiff was due to the negligence of the defendant before he could recover.

Defendant further contends that the court erred in giving this instruction No. 3 above quoted for the reason, it is said, that it left the jury the question as to whether or not the parties were engaged in interstate commerce and the questions as to whether or not the case was governed by the said employers' act. We think there is no merit in

this contention, there being no dispute in the evidence that the car which the plaintiff was switching was "hauling merchandise from one state to the other," in which event the court instructed the jury in effect that the car on which the plaintiff worked was engaged in interstate commerce.

It is further contended that it was the duty of the court to instruct the jury in positive terms, that if they found that plaintiff was guilty of contributory negligence, then they should diminish the amount of plaintiff's recovery in proportion to plaintiff's negligence.

A careful examination of the record leads us to the conclusion that there was no evidence even tending to show any negligence of the plaintiff which contributed to his injury, but aside from this, the court in its instructions properly defined contributory negligence as negligence on the part of the plaintiff which directly and proximately contributed to his injury, and without which he would have suffered no injury, and further that if the jury found that the defendant was negligent and said negligence was the proximate cause of the injury of the plaintiff, but also find that the plaintiff was negligent, in such event the defendant would be liable in so far as the defendant contributed to said injury or in proportion to the negligence that the defendant contributed to said injury.

Section 3 of the Federal Employers' Liability Act provides:

"The fact that the employe may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employe."

We think the instruction criticised by the defendant substantially complies with the provisions of the federal act with respect to the question of damages where both plaintiff and defendant are guilty of negligence.

Counsel for defendant state in their brief that admitting, for the sake of the argument, the instruction complained of was susceptible of the construction that it told the jury that if they found plaintiff guilty of contributory negligence, then to reduce the amount of his recovery in proportion to his negligence, it is then argued it was in direct conflict with paragraph No. 9 of the court's instructions to the jury.

Instruction No. 9 reads as follows:

"If you find for the plaintiff you are instructed that his measure of damages will

be such a sum that would fully compensate him for the injury and in determining the amount of his recovery, if any, you may take in consideration his earning capacity and his life expectancy and his ability to earn money and his physical permanent injury."

Instruction No. 9 was a general instruction to be considered in connection with all of the other instructions in the case. Where the instructions of the court, taken together and as a whole, correctly state the law, no error can be successfully predicated upon an allegation that the court failed to include in any one particular instruction all the law applicable to the case. Chitwood v. Palmer, 101 Okla. 300, 225 Pac. 969.

Under defendant's second proposition, it is contended that there was no sufficient evidence offered by plaintiff to show actionable negligence on the part of the defendant, and that the evidence showed that plaintiff's injuries were the result of an assumed risk.

The argument that the evidence offered by the plaintiff was insufficient to show actionable negligence on the part of the defendant cannot be sustained. As before stated, the defendant caused to be deposited around and about the switch stand in question an accumulation of rocks unknown by the plaintiff to exist at the time of the accident. It was the duty of the plaintiff to alight from a moving freight train in the early hours of the morning, while it was still dark, at that switch stand, for the purpose, it is assumed, of operating the switch.

On the question of assumption of risk, the defendant again cites the Seaboard Air Line Railway Case, supra, and our attention is called to the following language from the opinion of that case:

"When the employe does know of the defect, and appreciates the risk that is attributable to it, then if he continues in the employment, without objection, or without obtaining from the employer or his representative an assurance that the defect will be remedied, the employe assumes the risk, even though it arise out of the master's breach of duty."

The basis of this rule is that the employe must first know of the defect and appreciate the risk attributable to it. The courts have universally held that the employe only assumes such risks as are known to him or such risks as are so open and notorious that knowledge of the same will be imputed to him as a matter of law.

In the case of Cincinnati, N. O. & T. P. Ry. Co. v. Thompson (Circuit Court of Appeals, Sixth Circuit, Oct. 12, 1916) 236 Fed. 1, it appears that the plaintiff in that case was head brakeman on a freight train on defendant's railroad; that in alighting he jumped or stepped on a loose piece of furnace slag, the size of a man's two fists. It rolled under him and pitched him head foremost. He fell and his right foot, going under the cars, was crushed so that it had to be amputated. On the question of assumption of risk. it is said in the syllabus:

"Whether a brakeman, injured when he stepped on a large piece of slag in alighting from a moving train, assumed the risk of injury therefrom, held under the evidence for the jury."

The presence of loose rocks about the switch stand, where the switchman's work requires him to alight in the nighttime from a moving train, is not among the ordinary risks of a switchman's employment, and is itself an act of negligence, and in the absence of notice or knowledge such switchman cannot be held to have assumed it.

In the case of Chesapeake & Ohio Railway Company v. Proffitt, 241 U. S. 462, it is said in the syllabus:

"An employe is not to be regarded as having assumed a risk attributable to the employer's negligence until he becomes aware of it, unless it is so plainly observable that he must be presumed to have knowledge of it.

"An employe is not obliged to exercise care to discover dangers resulting from the employer's negligence, and which are not ordinarily incident to the employment."

In the body of the opinion, Justice Pitney, delivering the opinion of the court, said:

"To subject an employe, without warning, to unusual dangers not normally incident to the employment, is itself an act of negligence. And, as has been laid down in repeated decisions of this court, while an employe assumes the risks and dangers ordinarily incident to the employment in which he voluntarily engages, so far as these are not attributable to the negligence of the employer or of those for whose conduct the employer is responsible, the employe has a right to assume that the employer has exercised proper care with respect to providing a reasonably safe place of work (and this includes care in establishing a reasonably safe system or method of work), and is not to be treated as assuming a risk that is attributable to the employer's negligence until he becomes aware of it, or it is so plainly observable that he must be presumed to have known of it. The employe is not obliged to exercise care to discover dangers not ordinarily

incident to the employment, but which result from the employer's negligence."

The positive testimony of the plaintiff in the instant case was that he did not know of the presence of loose rocks about the switch stand, nor can it be said that he could, by the exercise of diligence, have discovered such a condition, taking into view the character of work he was called upon to perform and the time of night that he was called upon to perform it.

The jury's verdict involved a finding that plaintiff did not assume the risks and did not actually know of the conditions that obtained at the switch stand where he was injured and that he had not a sufficient opportunity to discover them.

We think the evidence conclusively shows that the plaintiff established a case of actionable negligence, for which the defendant is liable, and that the verdict rendered by the jury was not in any sense excessive.

We think the judgment should be affirmed.

By the Court: It is so ordered.