KANSAS, O. & G. RY. CO. v. DILLON, Adm'x.

No. 30322. May 5, 1942.

Rehearing Denied Dec. 8, 1942.

*135 P. 2d 498.*

O. E. Swan, C. A. Conway, Charles P. Gotwals, James D. Gibson, and F. T. McGraw, all of Muskogee, for plaintiff in error.

Moss & Young, of Tulsa, for defendant in error.

CORN, V. C. J. This is an action for the wrongful death of William E. Dillon, brought by his wife, Jessie L. Dillon, as administratrix of the estate of said deceased, against the Kansas, Oklahoma & Gulf Railway Company. Verdict and judgment were awarded the plaintiff in the sum of $13,500, and the railway company appealed. The parties are referred to herein in the order of their appearance in the trial court.

The deceased was employed as a brakeman and was engaged in a switching operation at the time of receiving his fatal injuries. It is alleged that on March 20, 1939, at about 8 p. m., the defendant was operating its freight train No. 60 over its sidetracks in the town of Allen in Pontotoc county, Okla., and was at the time of the accident spotting some oil tank cars on a sidetrack at said station. The deceased boarded the first car that was detached and shunted down the siding in order to apply the breaks and stop the car at the desired location. Following this car a number of other cars were detached and shoved down the track with considerable speed, and while the deceased was applying the brakes and bringing his car to a stop, these cars were permitted to run against the car on which deceased was riding with such force and violence as to knock him off of the car onto the tracks in front of it, said car running over his body and amputating one foot and badly mangling the other. As a result of these injuries, he died two days later.

The defendant, in its first assignment of error, complains that the trial court erred in overruling the demurrer to the plaintiff's evidence and in refusing to instruct the jury to return a verdict for the defendant.

Under this assignment of error the defendant advances four propositions as barring recovery: (1) That there is no proof of negligence; (b) that there is no proof that the negligence charged caused the accident; (c) that negligence on the part of Dillon bars recovery; and (d) that the deceased assumed the risk as a matter of law.

The accident occurred just after dark and there was no eyewitness to it. The evidence, therefore, is largely circumstantial, and this fact is the basis of the defendant's argument that there is no proof of negligence, nor proof that the negligence charged caused the accident.

Cases are cited wherein the evidence was held insufficient to sustain the verdict and wherein the facts were to some extent analogous to the facts in this case. But we deem the evidence in this case sufficient to go to the jury.

The train crew consisted of an engineer, fireman, conductor, and head brakeman or "list man," who was in control of the switching operations, and two other brakemen, including the deceased. In his work he was subject to the orders and under control of the conductor, R. M. Jones, and the head brakeman, Charles Chapman. The train reached this station about dark, and consisted of the engine and tender and twelve cars, ten of which were empty. After some preliminary movements a car was switched from the train down the main line of the tracks, and the deceased rode this car a distance of 300 to 350 feet to near where a dirt road crossed over the tracks. Immediately east of the main line was storage track No. 1, which paralleled the main line some 3,600 to 3,800 feet and immediately east of that was storage track No. 2, which switched off of storage track No. 1 about 50 or 60 feet at each end within the points of its connection with the main line. After he had stopped and gotten off of the car he had ridden down the main line, an empty tank car was switched on to track No. 2 from the north, and was allowed to drift down the same. James N. Covalt, the other brakeman, saw a lantern cross over from the car deceased had ridden down the main line to track No. 2, and saw the lantern go upon the south end of the drifting car, which continued to move a long way down the track. Then nine empty cars were kicked onto track No. 2 and were allowed to drift unattended. This was about three minutes after the first car was kicked onto track No. 2, on which deceased was riding. Then five more cars were switched onto the same track and Covalt stopped them near the dirt road crossing, which was not a great distance from the north end of the track where they were switched on. The conductor, R. M. Jones, testified that he was not present during any of the switching, but had been to the depot making up a list and on other business, and as he came northward from the depot he was walking between storage track No. 1 and No. 2, and had met the first car shunting down track No. 2 unattended, traveling about twelve miles an hour and about 1,600 to 1,800 feet from each end of said track. He mounted the car and by use of the brakes was able to bring it to a stop within about 15 car lengths. He left the car and started forward and met the nine cars unattended and traveling about the same rate of speed and about 15 car lengths behind the first car he had just stopped. He mounted said cars and brought them to a stop, and did so without crashing into the first car, barely touching the same and with practically no noise. He started on northward and when he discovered there were only two lanterns in sight he began to look for Dillon, and within four or five minutes found him lying between tracks 1 and 2 with one foot cut off and the other practically so. He talked to Dillon for only a second, and then hurried back, a distance of about 1,800 feet, and was gone about ten to fifteen minutes. Dillon was still lying in the same position and was suffering from wounds. Immediately when he returned he asked him how he got hurt and Dillon replied, "I got knocked off that car," and he asked him which car, and Dillon said "the first car," and he asked him if it was the first car that came down track No. 2, and he said "Yes." The testimony showed that some of these cars could be stopped in a shorter distance than others because of the weight and condition of brakes.

The witness Claude Gill testified that he lived about 200 to 300 feet east of track No. 2, and that he heard an unusual crash between the cars in the switching yard, and immediately after the crash he heard a masculine voice moaning and hollering.

The tracks were slightly down grade in the direction the unattended cars were moving, and they were moving at an accelerated speed when Jones came along and stopped them. The accident

had already occurred some distance up the track.

Under all the facts and circumstances shown, the probabilities of the case are most favorable to the plaintiff's theory of how the accident happened, to wit, that Dillon was slowing his car down preparatory to stopping when the pursuing string of cars rammed it from the rear and knocked him off and shunted it on down the track ahead of the other cars. From these facts may be drawn the reasonable inference and conclusion that the deceased received his injuries by reason of being knocked off the car by the impact of the collision of the string of nine cars against the car on which he was riding. If this be true, then arises the question of whether or not the defendant was guilty of negligence, acting through Chapman and Covalt, in allowing said nine cars to travel unattended down the track without the knowledge on the part of either as to whether or not deceased had left the first car and was in position to stop the nine cars.

We consider the facts sufficient as a matter of law to go to the jury. The duty of the trial court in passing upon a demurrer to the evidence or motion for directed verdict by the defendant in cases of this kind is stated in the following cases.

In the case of Rock Island Coal Mining Co. v. Allen 106 Okla. 188, 233 P. 1060, in the body of the opinion is found the following language:

"A motion to direct a verdict admits all of the facts and inferences to be drawn therefrom in favor of the party against whom the motion is directed, and leaves for consideration only such evidence as is favorable to the party against whom such motion is directed.

"Where, after disregarding all evidence tending to sustain the defense, there is any evidence from which the inference favorable to the plaintiff may be reasonably, although not necessarily, drawn, the court will not invade the province of the jury by withholding from it the right to pass on the facts to be deduced from such inference.

C., R. I. & P. Ry. Co. v. Gilmore, 52 Okla. 296, 152 P. 1096; Sharum v. Sharum, 82 Okla. 266, 200 P. 176; Oklahoma State Bank v. Airington, 68 Okla. 160, 172 P. 462; Kenney v. Williams, 66 Okla. 167, 168 P. 196; Young v. Cole, 91 Okla. 113, 216 P. 429.

"Where there is doubt as to which of several probable causes produce the injuries, the cause of the injuries is properly a question for the jury. Elliff v. Oregon R., etc., Co., 53 Ore. 66, 90 P 76; Petroleum Iron Works v. Wantland, 28 Okla. 481, 114 P. 717."

Acacia Oil & Gas Co. v. Tidal Oil Co., 91 Okla. 237, 217 P. 372, paragraphs 1, 2 and 3 of the syllabus:

"When the evidence offered or tendered by the plaintiff is sufficient to make a prima facie case, it is reversible error on the part of the trial court to sustain a demurrer thereto.

"It is a well-settled rule that a demurrer to the evidence admits all the facts which the evidence tends to prove or of which there is any evidence, however slight, and all inferences which can be logically and reasonably drawn from the evidence.

"It is the settled rule that a demurrer to the evidence admits every fact which the evidence in the slightest degree tends to prove, and all inferences or conclusions that may be reasonably and logically drawn from the evidence. This court will consider as withdrawn all the evidence which is most favorable to the party demurring. If the inference to be drawn from the evidence is a reasonable one, although not a necessary one, the court will not invade the province of the jury by taking from it the right to pass on the facts to be deduced from such inference. A demurrer to the evidence not only admits the truth of the evidence of the demurree, but also all of the facts which the evidence in any degree tends to prove, and is a waiver of all the evidence of the demurrant which conflicts with that of his adversary, and of inferences from his own evidence."

Stewart v. Bowser, 178 Okla. 382, 62 P. 2d 1195, paragraphs 2 and 3 of the syllabus:

"It is the duty of the trial court when ruling on motion for directed verdict,

at close of all evidence, to disregard all evidence unfavorable to the party against whom the verdict is sought, as well as incompetent evidence, and concede to be true all evidence supporting the view of the party against whom the motion is made. When this has been done, unless no recovery can be had on any view of the plaintiff's evidence, the case should be left to the jury.

"Peremptory instructions should only be given where all reasonable minds would draw the same conclusion, and it is error to direct a verdict where there is controverted question of fact before jury."

The fact that the evidence in this case is largely circumstantial does not militate against the probative force of such evidence, nor does it prevent it from presenting a disputed issue of fact necessary for determination by verdict of the jury. This court has so held in the following cases:

Weleetka Cotton Oil Co. v. Brookshire, 65 Okla. 293, 166 P. 408, paragraph 1 of the syllabus:

"Plaintiff in a civil case is not required to prove his case beyond a doubt. All that he is required to do is to make it appear to be more probable that the injury came in whole or in part from the defendant's negligence than from any other cause. This may be established by circumstantial evidence and the reasonable inference to be drawn therefrom, from which the jury may determine what was the proximate cause of the injury."

Missouri, K. & T. Ry. Co. v. Minor, 75 Okla. 10, 181 P. 142, paragraph 1 of the syllabus:

"In a civil case, all that the plaintiff is required to do in order to establish his case, is to make it appear to be more probable that the injury came in whole or in part from the defendant's negligence than from any other cause, and this fact may be established by circumstantial evidence and the reasonable inferences to be drawn therefrom."

Rock Island Coal Mining Co. v. Galvin, 96 Okla. 95, 220 P. 832, paragraph 1 of the syllabus:

"It is a settled rule of this state that negligence may be established by circumstantial evidence and the reasonable inferences to be drawn therefrom, and that the proximate cause of injury may be determined from circumstantial evidence."

Also, in St. Louis & S. F. Ry. Co. v. Hart, 45 Okla. 659, 146 P. 436; St. Louis & S. F. Ry. Co. v. Rushing, 31 Okla. 231, 120 P. 973.

The defendant alleges negligence on the part of the deceased as the cause of the accident by which the fatal injuries were sustained, but offers no evidence on the issue other than that the deceased was an experienced brakeman and was thoroughly familiar with his duties, and then argues in its brief that it was the duty of the deceased to stop the first car and to get off and go back and board the pursuing string of cars and stop them before they collided with the first car, and that his failure to accomplish this task constituted negligence on his part. There is no evidence to show that he knew the cars were unattended, or that he knew that the duty of stopping them was left to him by the other brakeman on the job. It is also suggested that he might have had a physical attack of some kind that caused him to fall, but this is pure conjecture without any foundation of facts.

In Petroleum Iron Works Co. v. Wantland, 28 Okla. 481, 114 P. 717, this court said:

"It is ordinarily the province of the jury to determine whether the negligence of the master is the natural and proximate cause of the injury complained of (Hartvig v. N. P. Lumber Co., 19 Ore. 522, 25 P. 358), and where there is doubt as to which of several probable causes produced the injury, the cause of the injury is properly a question for the jury. Eiliff v. Ore. R. & N. Co., 53 Ore. 66, 99 P. 76. The court will not weigh conflicting evidence or the inferences that may be reasonably drawn therefrom."

In the case of Berkbigler v. Scott County Milling Co. (Mo. App.) 275 S.W. 599, paragraph 4 of the syllabus is as follows:

"In action by widow for death of husband, plaintiff was not required to show with certainty what actually caused accident as, by showing the dangerous surroundings and circumstances, jury might find as reasonable certainty that death was result of defendant's negligence in respect alleged."

In Upton v. Conway Lbr. Co., 81 N.H. 489, 128 Atl. 802, at page 804, is the following language:

"It is never necessary that the relation between cause and effect be established to an absolute certainty.

" 'No such burden rested on the plaintiff. He was not bound to exclude all possible causes of death. He was required only to make it more probable than otherwise that the fact was as he claimed it. The rule of Deschenes v. Railroad, 69 N.H. 285, that the jury cannot be permitted to determine by guess or conjecture, between two equally probable causes of the injury, for one only of which the defendant is responsible, has no application unless the existence of a sufficient cause or causes for the injury, aside from the negligence charged is conceded or conclusively proved.' Boucher v. Larochelle, 74 N.H. 433, 434; 68 A. 870, 15 L.R.A. (N.S.) 416. See, also, Angelico v. Shattuck, Inc., 80 N.H. 290, 291, 117 A. 13; Lockwood v. Express Co., 76 N.H. 530, 537, 85 A. 783; Crawford v. Railroad, 76 N. H. 29, 31, 78 A. 1078; Lydston v. Rockingham County Light & Power Co., 75 N.H. 23, 25, 70 A. 385, 21 Ann. Cas. 1236."

In cases of this character each case must depend more or less upon its own peculiar facts, but in any such case all the plaintiff is required to do is to make it appear more probable than not that the death of the deceased came from the acts of negligence alleged on the part of the defendant. The application of this rule may be observed in any of the following cases in this and other jurisdictions.

Choctaw, Oklahoma & Gulf Railroad Co. v. Laura Louise McDade et al., 191 U. S. 64, 24 S. Ct. 24, 48 L. Ed. 96, paragraph 1 of the syllabus is as follows:

"The question whether a railroad brakeman was killed as a result of a collision with an overhanging waterspout on a water tank is for the jury, where there is evidence that when last seen he was signaling the engineer from his post on a car of more than average height and width, where he would be likely to be struck by the spout in passing, and that shortly thereafter he was missed by the train, his lantern found on the car, and his body discovered about 675 feet beyond the tank, with injuries which might have been produced by a collision with the obstruction."

St. Louis & S. F. Ry. Co. v. Clampitt, 55 Okla. 686, 154 P. 40. In this case an experienced brakeman alighted from a moving train upon a platform and his body was found to have been run over by the train. No one saw the manner in which he fell under the train or what caused him to fall. It was shown that the platform upon which he alighted was defective in that it had some planks raised above others, and rotten in places. It was the theory of the plaintiff that the deceased caught his foot on one of these defective planks and fell under the train. The case was sent to the jury upon this theory and a verdict was returned for the plaintiff. In affirming the judgment the court said:

"The question is not presented that the happening of an accident, in case of an employee, raises a presumption of negligence, and consequently the case of Patton v. Texas Pacific Ry. Co., 179 U. S. 658, 21 Sup. Ct. 275, 45 L. Ed. 361, does not apply, for while there is no direct evidence showing what caused the deceased to fall, there was evidence showing the condition of the platform, from which the jury might draw the inference that it was the condition of the platform that was the proximate cause of the death of the plaintiff's intestate. In Waters-Pierce Oil Co. v. Deselms, 18 Okla. 107, 89 P. 212, it is held: 'Where an accident has occurred resulting in the death of all the persons immediately connected therewith and there is no direct proof as to how the accident occurred, the manner of its occurrence may be shown by circumstantial evidence from which the jury may infer the manner and cause of the accident

if the inference is reasonable, although not a necessary one.'

"And this case was affirmed on writ of error by the Supreme Court of the United States in 212 U. S. 159, 29 Sup. Ct. 270, 53 L. Ed. 453. In Hayes v. Williams, 17 Colo. 465, 30 P. 352, it is held that what is the proximate cause of an injury, whether it be the original negligence of one party, or the intermediate negligence of another party, is ordinarily a question for the jury, to be determined from the minor associated facts and circumstances. In Booker Tobacco Co. v. Walker, 38 Okla. 47, 131 P. 537, it is held:

" 'It is only when the evidence, with all the inferences that the jury could . . . draw from it, will be insufficient to support a verdict for plaintiff that the court is authorized to direct a verdict for defendant; and, unless the conclusion follows, as a matter of law, that no recovery can be had upon any view that can be properly taken of the facts which the evidence tends to establish, the case should be left to the jury under proper instructions.'

"And see Creek Bank & Trust Co. v. Johnson, 33 Okla. 696, 217 P. 480, and St. L. & S. F. R. Co. v. Long, 41 Okla. 177, on page 212, 137 P. 1156, Ann. Cas. 1915C, 432.

"Applying the principle decided by these cases, it cannot be said that there was no evidence to go to the jury in this case. The plaintiff's evidence tended to prove that the platform was out of repair; that at the place where plaintiff's intestate alighted from the train there were nails protruding above the surface of the platform; that some of the boards had holes in them; some would spring when trodden upon, and some were rotten at the edge next to the track. In the absence of direct evidence as to what caused the plaintiff's intestate to fall, it was within the province of the jury to consider this evidence, and the inference drawn by them that it was these defects that caused the accident is not an improbable one."

Folsom-Morris Coal Mining Co. v. Morrow, 102 Okla. 33, 226 P. 53:

"The testimony shows that the roof of the passageway at the foot of the incline had sagged and was lower than the parts thereof immediately in front and behind the foot of the incline. It is true that the same thing occurred at other places, but the danger because of the incline made it particularly hazardous at this particular place where the accident occurred. It further appears that on the lower side there was barely room for the cars to clear the walls, while on the upper side props had been placed to support the roof bars, which narrowed the space, ordinarily about two feet.

"No witness saw the accident, but the body was found between two loaded coal cars which the deceased had been driving and almost across the track. He had lost his cap and lamp, which were found up the track. It is the theory of the plaintiffs that the deceased, after losing his lamp in the darkness, started to the upper side to get in the clear, but was caught between the side of the front car and the props and rolled to his death, falling between the cars at the opening. In our opinion there is ample testimony in the case to support this theory.

"It is not necessary that plaintiff allege and prove the exact manner in which the injury occurred. This may be established by circumstantial evidence and is a question of fact for the jury. . . ."

See, also, St. L. & S. F. Ry. Co. v. Darnell, 42 Okla. 394, 141 P. 785; Lusk v. Phelps, 71 Okla. 150, 175 P. 756; St. L. & S. F. Ry. Co. v. Starkweather, 148 Okla. 94, 297 P. 815; Frisco Lumber Co. v. Spivy, 40 Okla. 633, 140 P. 157; Chicago, R. I. & P. Ry. Co. v. Calloway, 145 Okla. 84, 291 P. 111; Strunks v. Payne, 184 N.C. 582, 114 S.E. 840.

The question of assumption of risk, under the facts in this case, was a question of fact for determination by the jury. The applicable rule is succinctly stated in Dickinson v. Granberry, 71 Okla. 9, 174 P. 776, in paragraph 7 of the syllabus:

"Under the Federal Employers' Liability Act (Act April 22, 1908), c. 149, 35 Stat. 65 (U. S. Comp. St. 1916 §§ 8657-8665), the servant assumes all the ordinary risks of his employment which are known to him, or which could have been known by the exercise of ordinary

care to a person of reasonable prudence and diligence in like circumstances. Risks not naturally incident to the occupation, but which arise from the negligence of the master, are not assumed by the servant until he becomes aware of such negligence and of the risk arising therefrom, unless the negligence and risk are so apparent and obvious that an ordinarily careful person would observe the one and appreciate the other. Whether the risk is an ordinary risk known to the servant, or with knowledge of which he is chargeable, is a question of fact to be submitted to the jury."

Paragraph 6 of the syllabus of said case, on the question of contributory negligence, is as follows:

"Under the Federal Employers' Liability Act (35 Stat. 65), contributory negligence on the part of the employee injured is not a bar to recovery, but it is the duty of the jury to diminish the damages in proportion to the amount of the negligence attributable to such employee."

In the instant case the risk was caused, under the plaintiff's theory, by Chapman and the other servants of the defendant shunting the nine cars onto the storage track No. 2 and the striking with same of the car ridden by the deceased. The circumstantial evidence shows that the deceased had not stopped the first car when it was struck by the nine cars. The most favorable evidence to the plaintiff reveals that the nine cars were shunted upon said track in about three minutes after the first car was shunted upon the track. Deceased had caught this first car. It was his duty to stop the same by the use of a hand brake. Neither Chapman nor any other members of the crew at the time of the shunting of the nine cars on this track knew whether or not the deceased had brought this car to a stop and was out of danger from the nine cars. The risk here involved was not naturally incident to the ordinary and prudent switching operations, but obviously arose out of the negligent manner in which these operations were performed. Therefore, under these facts, the trial court could not hold, as a matter of law, that the deceased assumed the risk.

Other cases in point are Chicago, R. I. & P. Ry. Co. v. Ward, 68 Okla. 201, 173 P. 212; St. Louis & S. F. Ry. Co. v. Landers, 116 Okla. 142, 243 P. 959; Missouri, O. & G. Ry. Co. v. Overmyre, 58 Okla. 723, 160 P. 933; Chesapeake & Ohio Ry. Co. v. John J. DeAtley, 241 U.S. 310, 36 S. Ct. 564, 60 L. Ed. 1016; Choctaw, Oklahoma & Gulf Ry. Co. v. McDade, 191 U. S. 64, 24 S. Ct. 24, 48 L. Ed. 96; Missouri, Kansas & Texas Ry. Co. v. Herron, 176 Okla. 162, 55 P. 2d 95.

The trial court admitted in evidence, over the objection of the defendant, the above-mentioned statements of the deceased as a part of the res gestae, and this is urged by defendant as reversible error. The statements were made only a few minutes after the terrible accident occurred and under such conditions as to preclude the possibility of design. Under such conditions we are of the opinion that the statements of the deceased would be admissible under the most strict application of the rule. This court, in its liberal application of the rule, in many cases has said:

"The question of the admissibility of statements as a part of the res gestae is largely determined by the facts and circumstances of each case, and should in a great measure be left to the determination of the trial court." Smith v. Chicago, R. I. & P. Ry. Co., 42 Okla. 577, 142 P. 398; Marland Refg. Co. v. Snider, 120 Okla. 116, 251 P. 989; Standard Accident Ins. Co. v. Baker, 145 Okla. 100, 291 P. 962; Feenberg Supply Co. v. Pierce, 185 Okla. 662, 95 P. 2d 640.

Objections are raised to a number of the instructions given by the court to the jury, but in our view of the case the instructions are substantially correct.

Finding no substantial error in the trial of the case, and the verdict and judgment not appearing unreasonable or excessive, the judgment is affirmed.

WELCH, C.J., and RILEY, OSBORN, HURST, DAVISON, and ARNOLD, JJ., concur. GIBSON, J., dissents. BAYLESS, J., absent.

GIBSON, J. (dissenting). The statement of facts as set out in the majority opinion is substantially correct, but, as I believe, too condensed to furnish a comprehensive picture of all the important facts and circumstances out of which defendant's negligence is said to have arisen.

Defendant offered no evidence on its own behalf, but rested on completion of the cross-examination of plaintiff's witnesses, and thereupon demurred to all of the evidence and moved for a peremptory instruction in proper form.

Defendant's train on which the deceased was employed as a brakeman arrived at the town of Allen about 6:45 p. m. on March 20th. The first duty performed by the crew was to remove 27 cars from storage track No. 2 so that proper spotting of certain cars might be made. These 27 cars were pulled onto the main track, and one of them shunted south on said track a distance of 300 or 400 feet from the point where storage tracks joined the main line, where it was brought to a stop by decedent pursuant to his duties as brakeman. Thereupon another car was cut out and rolled onto track No. 2 and allowed to move off on its own momentum. The deceased, in the performance of his duties, was seen to cross from the main line to track No. 2, where he boarded the car last mentioned for the apparent purpose of bringing the same to a stop by means of the hand brakes, as was his duty. He was not seen again until after his injury.

Then the crew cut out another car and shunted it down the main line. Then nine cars were cut loose and shoved off on track No. 2. It was deceased's duty to board all these single cars and groups of cars and to bring them to a stop at some spot thought to him suitable under the circumstances. There is no evidence to indicate whether he ever boarded the second car on the main line or the nine cars on track No. 2.

It had grown dark in the meantime. The conductor discovered the first car on track No. 2 moving along unattended at a speed of 11 or 12 miles per hour. He climbed on and brought the same to a stop. He then walked north and met the nine cars moving along at about the same speed. They, too, were unattended. He boarded these cars and brought them to a stop against the first car with very little resulting noise. He then proceeded north again, and a few moments later, about 8 p. m., found decedent lying near the tracks fatally injured. In reply to a question, the injured man told the conductor that he had been knocked off the first car that came down track No. 2.

In the meantime other switching operations had taken place, but, according to the trainmen, all were performed in the usual and customary manner.

The witness Gill, who resided 300 or 400 feet from the tracks, said he had gone to bed that evening about 7:30, and that at some time thereafter prior to 8 p. m. he heard an unusual collision of cars in the yards immediately followed by the sound of a masculine voice moaning and hollering. He made no investigation.

Plaintiff's theory was that decedent was riding the first car on track No. 2 and was attempting to bring the same to a stop when the nine cars aforesaid were carelessly shoved off on track No. 2 with such force that they overhauled and collided with the first car with such violence as to cause decedent to be thrown beneath said car or in the path of the nine cars, resulting in his fatal injury.

Defendant's negligence hangs entirely on the statement of the injured man to the conductor, which I agree may be considered as part of the res gestae, and the testimony of Gill, above.

The only evidence favorable to plaintiff was that some time between 7 and 8 o'clock p. m. the decedent was knocked off of the first car to come down track No. 2; that during the latter half of that hour there was the sound of an unusual collision between cars in the yards followed by the voice of a man as if in pain.

On the other hand, there were numerous switching operations and the coupling of cars with the usual and customary noises ordinarily attendant upon such operations.

In order to charge defendant with actionable negligence, it must first be found that the unusual collision was a result of a negligent act of the other employees; that such collision was between the nine cars and the car on which the deceased was riding; that said collision knocked him off the car, and was the proximate cause of the injuries.

In arriving at a verdict for plaintiff the jury was compelled to infer that the unusual collision heard by Gill was the result of a negligent act on the part of other employees; to infer that said collision was between the nine cars and the car on which deceased was riding; to infer that such collision knocked deceased off said car.

Assuming that the jury might properly infer that the collision was the result of a negligent act, there is no circumstance in evidence to support an inference that the collision heard was between the nine cars and the single car, or, in fact, that those cars ever collided at all. This is the fatal gap in plaintiff's evidence looking toward causal connection between the alleged negligent act and the injury.

This case does not present the question of necessity of choosing between probable causes. The evidence pointed to no circumstance that would indicate any particular cause. Deceased got knocked off the car, but, as to the cause, the evidence is entirely silent. The case would seem not to fall within the rules stated in the first three paragraphs of the syllabus of the majority opinion.

In my opinion the trial court should have directed a verdict for defendant. I therefore respectfully dissent.